IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO 2:06-cr-94-WKW |
| | ) | |
| WILLIE DAVIS DEWHART | ) | |

UNITED STATES ARGUMENT IN SUPPORT OF
FINDING OF COMPETENCE TO STAND TRIAL

**COMES NOW** the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and files the following in support of a finding of

competency to stand trial based upon evidence presented to the Court as follows:

1.      On March 27, 2006, around 9:05 p.m. Alabama State Trooper Andy Sutley saw a teal

green Ford Taurus on I-85 southbound near the 17 mile marker. The car was following a red pickup

truck less than a car length from the time he passed Sutley to the 16 mile marker. Sutley stopped the

car near the 15 mile marker. Sutley approached the passenger side of the car and asked the driver,

Willie Davis Dewhart, for his license. Dewhart had to look for his license before he found it. Sutley

asked if he owned the car and he said it was a rental. Sutley asked for the paperwork and noticed

Dewhart did not rent the car. During this time Sutley saw a plastic bag just under the front seat.

Dewhart was moving his legs and appeared to be trying to hide the bag. Sutley asked Dewhart what

was in the bag and he said, "Papers." Sutley asked Dewhart to let him see the bag. Dewhart put the

car in drive and drove off as Sutley stood next to the car. Sutley ran back to his car and went after

Dewhart. Sutley notified dispatch that he was in pursuit. Dewhart drove south around the 14 mile

marker, crossed the median, and drove north on I-85. Dewhart was driving over 100 mph and drove

from the left lane to the right lane, and back. Around the 15 mile marker, Dewhart threw out a bag

which hit Sutley's car and fell toward the median. Sutley told dispatch about the package and continued to pursue Dewhart. Dewhart exited at exit 16 nearly hitting a car. Dewhart drove to the top of the ramp, ran the stop sign, and drove down on the ramp. Dewhart then left the roadway and drove down the ditch to the right of the on ramp. Dewhart stopped and opened the driver's side door. Sutley hit the door and Dewhart ran into the trooper car as he fled. Dewhart ran behind the car, up the hill, and into the woods as Sutley gave chase. Dewhart attempted to cross a fence and fell. With his weapon pointed at Dewhart, Sutley ordered him onto the ground and onto his stomach. Sutley secured his weapon and handcuffed Dewhart. Trooper Will Barnes arrived and Sutley told Barnes to go to the area of the 15 mile marker and locate the package Dewhart threw out. Trooper Barnes did locate the package and recovered chunks of white powder which tested positive for cocaine. Sutley told Dewhart to walk out of the woods and back to the front of his car. Deputy Jeremy Ledyard of the Montgomery County Sheriff's Department arrived. Sutley told Dewhart to sit down on the roadside near the front of the Taurus. Dewhart sat down for a few minutes but jumped up and ran into the door of the Taurus, placing his head through his driver's window. Dewhart fell back and ran his head into the push bumper of Sutley's car. Dewhart then began beating his head against the driver's door of his car. Sutley pulled Dewhart away from the car and told him to sit down. Dewhart tried to get up and Sutley stood over him. Dewhart kicked the Deputy in his stomach. Rescue was called to the scene and Dewhart was transported to the emergency room of Baptist South. Sutley called BLOC who advised Dewhart was on federal probation and had numerous arrests for drugs and firearms violations.

2.     On April 5, 2006, a federal Grand Jury sitting in the Middle District of Alabama, indicted Dewhart in a one-count indictment charging Dewhart with , knowingly and intentionally

2

possessing with intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), on March 27, 2006 in Montgomery County, within the Middle District of Alabama.

3.    On April 27, 2006, the defense motioned for a psychiatric examination based upon Dewhart's reported memory loss, and his history of mental illness as reported in the PreSentence Report prepared for the Court in case 2:00cr97-D.(Doc. 14.) The request for evaluation was granted.

4.    On or about August 11, 2006, Dr. Karen Milliner, Psy.D., returned a report to the Court in which she opined that, during her approximately one month assessment of Dewhart, Dewhart did not evidence mental illness but might have organic intellectual issues. (Forensic Report of 8/11/06 at p.6.) It should be noted, however that throughout his stay Dewhart continued to say that he was hearing voices in his head.(Forensic Report 8/11/06 at p. 5.) Dr Milliner concluded that the possibility that Dewhart was exaggerating his mental deficits and malingering were raised by the testing but, that if he were not, the deficits he exhibited in understanding basic legal concepts could be remediated through training and restored to competency to stand trial.

5.    On or about June 5, 2007, Dr. Chad Brinkley, Ph.D., returned a report to the Court in which he opined that Dewhart evidences no mental illness but may habe some level of intellectual disability. Dr. Brinkley was unable to reach a finding of mental retardation in the case because Dewhart malingered to the point that a good understanding of his mental abilities could not be gauged with any degree of reliability. Dr. Brinkley did conclude, however that Dewhart is competent to stand trial as he has the present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as a factual understanding of the proceedings against him.(Forensic Report 6/5/07 at p. 18-22.) Dr. Brinkley assessed and evaluated Dewhart for four

3

months.

6.     Dr. Brinkley, in forming his opinion, consulted with Dr. Robert Denney, Psy.D., ABPP. Dr. Denney performed a series of tests on Dewhart and he concluded that Dewhart was malingering though he did appear to have some level of intellectual disability.

7.      On July 22, 2008, Dr. Daniel Koch, Ph.D, returned a report in which he states that, "...it was impossible to perform a reliable evaluation."), and that he is unable to offer an opinion with any confidence regarding the defendant's competency to stand trial. (Forensic Report of Dr. Koch at pages 2 and 6.) Dr. Koch spent approximately four hours with Dewhart.

8.     On August 12, 2008, a competency hearing was held and all of the foregoing experts were called to testify. All of the experts testified to essentially the same opinion as stated in their reports.

9.     The government relies on the forensic evaluation submitted to the Court by Drs. Brinkley and Denney, in which the examiners were unable to reach a conclusion as to Dewhart's real mental abilities because of his continued efforts to malinger but did conclude that Dewhart is competent to stand trial, and the lack of any evidence or expert opinion in opposition to Drs.' Brinkley and Denney.

**Legal Analysis**

10.     The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.  A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or " a rational as well as a factual understanding of the proceedings against him [her]." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed 2d 824 (1960) (internal

quotation marks omitted.)  The Supreme Court has held that:

> "competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 1376, 134 L.Ed 2d 498 (1996) (quoting *Drope v. Missouri,* 420 U.S. 162, 171-172, 43 L.Ed. 2d 103, 95 S.Ct. 896 (1975) (J. Kennedy, concurring).

11.    Courts are thus required to conduct a competency hearing to determine whether (1) a defendant possesses the capacity to contribute to his own defense, and (2) whether a defendant can receive a fair trial.  *See James v. Singletary*, 957 F.2d 1562, 1570 (11th Cir. 1992, *cert. Denied, 510 U.S. 896, 114 S.Ct. 262, 126 L.Ed. 2d 214 (1993).  Medina v. California*, 505 U.S. 437, 449, 120 L.Ed. 2d 353, 112 S.Ct. 2572, establishing that a State may presume that a defendant is competent and require him to prove incompetence by a preponderance of the evidence.  The presumption affects the outcome "only in a narrow class of cases...where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent."  *Medina, supra*, at 449.

12.    This circuit has embraced the standard set forth by the ABA, and it is the one applied here:

> A finding of mental incompetence to stand trial may arise from mental illness, physical illness, or disability; mental retardation or other developmental disability; or other etiology so long as it results in a defendant's inability to consult with defense counsel or to understanding the proceedings.

Competency to Stand Trial

13.    The test for determining competence to stand trial is "whether [Dewhart] has *sufficient present ability* to consult with his lawyer with a reasonable degree of understanding - and

whether he has a rational as well as a factual understanding of the proceedings against him". *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L. Ed.2d 824 (1960) (Emphasis added).

14.     The Court of Appeals has described the kind of evidence that is pertinent to the court's findings on Dewhart's mental competence to stand trial. The useful factors to consider include "evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion". *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996). These factors are advisory, however, and are not exhaustive of the circumstances that the court may consider in determining mental competency. The Supreme Court has recognized that "there are... no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed". *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103(1975).

15.     When considering the facts and circumstances of this case, the government urges the Court to consider Dewhart's significant violent criminal history and lengthy contact with the criminal system; consider that 4 experts have evaluated Dewhart and of those 4, two concluded that Dewhart is competent to stand trial, 1, Dr. Milliner, believed he was competent but wanted further evaluation and 1, the defendant's hand-picked expert, had no reliable opinion professionally as to Dewhart's competency to stand trial at this time; consider that Dewhart has never before (even in his federal case before this Court) been found to be incompetent to stand trial; consider that information received about Dewhart's upbringing, drug use and present "memory loss" are reported by Dewhart, the one person who has a vested interest in being excused from responsibility for his actions.

Finally, the government would posit the following: if you accept that Dewhart is mentally retarded and not psychotic or mentally ill, and has been from birth, regardless of the degree, then he has been mentally retarded throughout all of his contacts with the legal system to include all arrests,

6

convictions and acquittals and has, in fact, aided his present attorney in negotiating a plea agreement in federal court in case 2:00cr94-D. This Court should review the PSR in the prior federal case carefully in evaluating Dewhart's ability to lie, manipulate, and act, always, to and in his own best interest. Mental retardation does not exponentially increase as one ages. Dewhart is not becoming more mentally retarded, he is learning and adapting his actions and responses to achieve an end he desires.

**Conclusion**

The United States contends that the defendant does have sufficient present ability to consult with his lawyer with a reasonable degree of understanding and a rational as well as factual understanding of the proceedings against him and believes that the Court has sufficient evidence to make such a finding.

Respectfully submitted, this the 25th day of August, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: susan.redmond@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR.  NO 2:06-cr-94-WKW |
| | ) | |
| WILLIE DAVIS DEWHART | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Susan G. James.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: susan.redmond@usdoj.gov